IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**WILLIAM GRANT**,

        Plaintiff,

vs.                                                Case No. 24-cv-216-WJ-SCY

**ISAAC ARAGON, a former law enforcement officer with the City of Albuquerque**,

        Defendant,

**CITY OF ALBUQUERQUE**,

        Intervenor.

## MEMORANDUM OPINION AND ORDER
## GRANTING THE CITY OF ALBUQUERQUE'S MOTION TO INTERVENE

**THIS MATTER** comes before the Court upon the City of Albuquerque's ("the City") Motion to Intervene (**Doc. 3**). Pursuant to Federal Rule of Civil Procedure 24, the City seeks to intervene—either as of right or, alternatively, with the Court's permission. Having reviewed the pleadings and applicable law, the Court **GRANTS** the City's Motion (**Doc. 3**) for intervention of right and/or permissive intervention as a matter of the Court's discretion.

**BACKGROUND, PROCEDURAL HISTORY, AND LEGAL STANDARD**

William Grant filed a federal civil rights lawsuit, pursuant to 42 U.S.C. § 1983, on March 1, 2024, seeking to recover an award of damages, punitive damages, and attorney fees (**Doc. 1 at 4**) against Isaac Aragon. Plaintiff Grant alleges that Defendant Aragon violated his right to be free from "unreasonable use of deadly force as guaranteed in the Fourth Amendment." *Id.* **at 1, ¶ 2**.

1

The operative facts revolve around a traffic stop that occurred on March 7, 2021, in the vicinity of Montaño Road in Albuquerque, New Mexico (**Doc. 1 at ¶ 5**). At the time, Defendant Aragon was employed by the City as a law enforcement officer—and it is alleged he "was acting in the scope of his employment and under color of state law." *Id.* **at ¶ 4**. Thus, a critical question in this litigation may well boil down to "who is liable?"

In the prior state court litigation, the City was: (1) a named Defendant in one case, and (2) moved to become an intervenor in the other. See **Doc. 3 at 1–3** (citing *William Grant v. City of Albuquerque*, at Docket No. D-202-CV-2022-01345; *William Grant v. Isaac Aragon*, at Docket No. D-202-CV-2023-8680). This makes inherent sense—given that it is alleged "Aragon was acting within the scope of his employment and under color of state law." **Doc. 1 at ¶ 4**. Thus, the City needed to intervene because it is "mandated by law to defend [its] former employee." *See* **Doc. 3 at 6** (citing NMSA 1978 § 41-4-4).

Two key provisions of law guide the Court's analysis. First, is the New Mexico Tort Claims Act's immunity statute which states the City is required to:

> [P]rovide a defense, including costs and attorney fees, for any public employee when liability is sought for:
> (1) any tort alleged to have been committed by the public employee while acting within the scope of his duty; or
> (2) any violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico when alleged to have been committed by the public employee while acting within the scope of his duty.

NMSA 1978 § 14-4-4B(1)–(2). The next guiding principle is Federal Rule of Civil Procedure 24. This Rule makes clear that the Court ***must*** permit intervention by a party who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Given the clarity of on-point precedent, the Court determines intervention is warranted—first as "of right" under subparagraph (a), and second as a matter of the Court's discretion under subparagraph (b).

## DISCUSSION

### I. Intervention as of Right

Under Rule 24(a), a nonparty seeking to intervene in litigation as "of right" must establish: (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties. *Kane Cnty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019). When evaluating if intervention is warranted, the Court takes heed of the relevant Tenth Circuit precedent (which explains courts should take a "liberal approach to intervention"). *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). Put another way, granting motions to intervene is the favored practice in this circuit. *See id.*; *cf. Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (noting the Tenth Circuit follows "a somewhat liberal line in allowing intervention").

Despite this liberal approach favoring intervention, Plaintiff's counsel opposes the City's intervention (**Doc. 5**). In so doing, counsel asserts that "Plaintiff has brought this lawsuit against the individual police officer . . . [and] the City has failed to articulate how the officer's attorney, whom the City will handpick, will inadequately protect the City's financial interest." *Id.* at **1**. Although the Court presumes Plaintiff is correct that Defendant Aragon hopes to "defeat liability and limit a damage award," *id.* at **2**, Defendant is not the financially liable party. And, as explained

below, the party who will have to pony up the payment for a loss will ostensibly fight harder—and perhaps differently—than the former[1] employee who will not be liable for damages.

### A. Timeliness

Timeliness is assessed "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (citation omitted). If, for example, "the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." 7C CHARLES A. WRIGHT, ET. AL., FEDERAL PRACTICE & PROCEDURE § 1916, at 539–40 (3d ed. 2007). When evaluating prejudice, the Tenth Circuit requires the prejudice be "caused by the movant's delay, not by the mere fact of intervention." *Okla. ex rel. Edmondson v. Tyson Foods*, 619 F.3d 1223, 1236 (10th Cir. 2010).

Here, the City's motion to intervene (**Doc. 3**) was filed 24 days after the Complaint (**Doc. 1**). Because the City moved to intervene quickly, there is clearly no prejudicial delay. The Court finds the motion to intervene was timely, and thus, supports intervention.

### B. Interest

The Court now turns to the second element, namely: has the City established a sufficient interest in the litigation? Again, the Court finds it has.

Without intervention, the City faces the threat of economic injury. *See Utahns for Better Transp. v. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002); *Nat'l Farm Lines v. Interstate*

---

[1] Strategically, Plaintiff glosses over any potential animus Defendant Aragon may have against his former employer. The City, smartly, highlights these diverging interests in their "impairment" and "inadequate representation," sections. *See* **Doc. 3 at 7–9**. Specifically, the City notes that Defendant Aragon may: (1) harbor hostility against the City or its' officials, and (2) invoke his Fifth Amendment privilege. *Id.* Quite obviously, then, Defendant Aragon and the City are uniquely situated.

*Com. Comm'n*, 564 F.2d 381, 382 (10th Cir. 1977). As mentioned above, § 41-4-4 requires the City to pay for Defendant's defense, any damages, or settlement (**Doc. 3 at 6**). There is no doubt, then, that the City's interest in the litigation is "direct, substantial, and legally protectable." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth*, 100 F.3d at 840 (quoting *Vermejo Park Corp. v. Kaiser Coal Corp.*, 998 F.2d 783, 791 (10th Cir. 1993)). Accordingly, the Court finds that these are valid interests, and that the instant litigation may adversely affect the City's interests.

For these reasons, the City's interests are sufficient to support intervention.

### C. Potential impairment

Under Rule 24(a), a nonparty seeking to intervene must establish that the instant lawsuit could potentially impair its interests outlined above. Intuitively, the question of impairment is related to the question of an interest. *See Utahns for Better Transp.*, 295 F.3d at 1116 ("[T]he question of impairment is not separate from the question of existence of an interest."); *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) (same). Under this prong, the City restates all of its' arguments above (as well as an additional[2] argument about being at a "tactical disadvantage"). Most tellingly, the City notes that because it is not a named party, "it is not in a position to protect its financial interest in the outcome of this case . . . . [and therefore] cannot raise arguments, objections or defenses that protect its interests

---

[2] This instant lawsuit is the third filed by Plaintiff. The City notes this is poor gamesmanship, noting:
> [T]he City will be prejudiced if it is not allowed to intervene since it will not be afforded the opportunity to conduct and participate in discovery which Plaintiff will likely use against it and/or against Isaac Aragon as a witness in the state court action. In a similar vein, Isaac Aragon has not had the benefit of participating and conducting discovery in the pending state court action against the City which has put him and his counsel at a tactical disadvantage since there are matters that the City has been privy to that he has not had notice or opportunity to defend against. Consequently, Mr. Aragon has been put in a position of disadvantage by Plaintiff's subterfuge in filing multiple lawsuits. Now, by filing the present litigation in federal court against Isaac Aragon only, Plaintiff seeks to also put the City and its counsel at a disadvantage.

**Doc. 3 at 7–8**.

5

in discovery and trial." **Doc. 3 at 8**. It strikes the Court that the City stands to lose a lot if excluded from intervening in this case.

Plaintiff states that "the City retains the statutory right to recover the costs of its defense and any exemplary damages entered against Aragon." **Doc. 5 at 2**. But the statute is not so cut and dry. Instead, the City can only recover from Defendant Aragon if it is shown that "the public employee acted fraudulently or with actual intentional malice." NMSA 1978 § 41-4-4E.

The Court—having already discussed how the instant litigation would adversely impair the City's interests—stands by those findings when concluding there is a potential impairment. Once again, the Court concludes intervention is supported.

### D. Inadequate representation by existing parties

Finally, the City must establish that Defendant Aragon cannot adequately represent its interests in the instant litigation. This burden is low—as it is enough to show that the representation might be inadequate. *See Kane Cnty.*, 928 F.3d at 892. Essentially, a nonparty seeking intervention need only show the possibility of inadequate representation. *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1124 (10th Cir. 2019).

Plaintiff proffers that the City and Defendant Aragon have identical objectives (**Doc. 5 at 4**). But the City points out—correctly—that "Mr. Aragon . . . has no financial interest in the outcome of this case." **Doc. 8 at 1**. The case law is clear: a direct financial interest is an adequate basis for intervention. *See supra* ¶ I.B.

But here, the City's interests diverge—or, at the very least, appear to diverge—from those of Defendant Aragon (**Doc. 3 at 9**). On this point, the City explains there is a conflict regarding its' finding that Defendant Aragon violated City policies (and may harbor "hostility" resulting from his termination). *Id.* Also, there is no denying that Defendant Aragon does not possess the

same motivation to defend the City's coffers as compared to the City's attorney. The stakes are drastically different. Although aligned in terms of defending against wrongdoing generally—the City and Defendant Aragon do not share identical or symmetrical interests.

Thus, the Court concludes the Defendant's and nonparty's interests are sufficiently divergent to satisfy the "minimal" burden standard. *See WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009).

In sum, each of the four factors supports granting the movant's motion to intervene as of right under Rule 24(a).

## II. Permissive Intervention

In addition to a nonparty's ability to intervene as of right, a nonparty may also intervene at the Court's discretion. *See* Fed. R. Civ. P. 24(b).

To satisfy this Rule, the party seeking intervention must establish "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When exercising its discretion to intervene, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015).

Here, Plaintiff opposes permissive intervention due to "increase[d] costs," **Doc. 5 at 2**. The irony of this argument is not lost on this Court. On one hand, Plaintiff's argue that allowing the City to intervene should be denied because of costs. Yet, on the other hand, Plaintiff has now filed three lawsuits originating from the same incident. Candidly, that is not a wise way to mitigate costs. *See* **Doc. 3 at 1–3; Doc. 5 at 2; Doc. 8 at 3**.

The Court finds there are: (1) common questions of law, (2) common questions of fact, and (3) the City's intervention would not "unduly delay or prejudice the adjudication of the original

parties' rights." Fed. R. Civ. P. 24(b)(3). This makes sense—given that the Court has already found that the City's Motion was timely and revolves around the same nucleus of operative facts. But even if intervention as of right was not appropriate, the Court would exercise its broad[3] discretion in permitting the City to intervene under Rule 24(b). *See United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1390 (10th Cir. 2009).

## CONCLUSION

For the reasons stated above, the City may intervene in the instant litigation as of right, or alternatively, at the Court's discretion. *See* Fed. R. Civ. P. 24(a), (b). Accordingly, the City's Motion (**Doc. 3**) is **GRANTED**.

**IT IS SO ORDERED**.

/**s**/

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Although the Tenth Circuit has not explicitly stated district courts have "broad discretion" in ruling on Rule 24(b) motions, it is necessarily true—given that the standard of review is abuse of discretion. *See Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 89 (10th Cir. 1993).
    Even so, this Court cites to those Courts of Appeals who have employed the "broad discretion" phrase with respect to such motions. *See, e.g., T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020); *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992); *United States v. Territory of the V.I.*, 748 F.3d 514, 524 (3d Cir. 2014); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989); *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002).

8